13353

HUTTO v. STATE BOARD OF EDUCATION *ET AL.*
YON v. SAME

(162 S. E., 751)

*Messrs. Timmerman & Graham,* for petitioners.

*Mr. E. L. Asbill,* for respondents.

February 23, 1932.

The opinion of the Court was delivered by MR. JUSTICE STABLER.

These two cases, at the request of counsel, were heard together. The questions involved are the same, and we shall dispose of both cases in one opinion. The facts out of which the controversies arose may be thus stated:

At its 1930 session, the Legislature passed an Act (36 St. at Large, p. 1346), authorizing and regulating the disbursement of funds for transportation of pupils to and from public schools of the State. Section 1 reads as follows: "The County Board of Education of the respective Counties of South Carolina shall designate official routes for the transportation of pupils to and from public schools in said Counties, which routes shall be approved by the State Department of Education."

We quote also so much of Section 3 as is pertinent to this discussion: "All contracts for transportation of pupils shall be let only after public bidding had been advertised for in one or more newspapers of the County at least once a week for not less than three consecutive weeks. All bids shall be addressed to the County Superintendent of Education, marked on outside of sealed envelope 'Bid for transportation of pupils on Route No. . . . . ,' and shall be opened at

the hour designated in the advertisement. Bids shall be opened and awards made by the County Board of Education, who shall have the right to reject any and all bids, and to readvertise for new or additional bids. *All contracts for transportation shall be awarded to the lowest responsible bidder.* * * * " (Italics added.)

Under the authority of this Act, the County Board of Education of Lexington County, in August, 1931, duly advertised for bids for transportation of pupils on Routes B and D of Pelion School District No. 25, in Lexington County. The bidders for Route B were O. L. Hutto at $79.85 per month, and A. M. Sharpe at $90.00 per month. Among those for Route D were B. T. Yon at $70.00 per month, and M. C. Laird at $85.00 per month. The County Board of Education, when it came to consider the bids—and bidders—awarded the contract for Route B to Sharpe and the contract for Route D to Laird. Thereupon, Yon and Hutto appealed to the State Board of Education, joining with themselves as appellants the trustees of the school district. Later, however, Schumpert and Hartley, two of the trustees, filed a statement to the effect that they did not authorize their names to be so used and asked that they be withdrawn.

The grounds of the appeal were: (1) That the County Board of Education committed error in not awarding the contract for Route B to Hutto, whose bid was less per month than that of Sharpe; and in not awarding the contract for Route D to Yon, whose bid was less per month than that of Laird; and (2) that the action of the County Board of Education in awarding the contracts to Sharpe and Laird was illegal.

The appeals were heard by the State Board of Education on a statement or return of the county board, which set forth the reasons for awarding the contracts to Sharpe and Laird and for refusing to award them to Hutto and Yon, and on numerous affidavits relating to the fitness and re-

sponsibility of the four bidders involved. The statement or return of the county board was, in part, as follows:

"The contract for transportation of pupils on Route B was awarded to Mr. A. M. Sharpe for the reason he gave entire satisfaction last year in every respect to all concerned, his bid being ten per cent. lower than it was last year. From all the facts before us we concluded he was a responsible driver. It is true Mr. O. L. Hutto submitted a lower bid, but we concluded his physical condition eliminated him as a responsible driver due to his right arm being badly broken. On account of this fact we concluded he was not a proper person for driving a bus and therefore did not give him the contract.

"As to Route D the lowest bidder was Mr. B. T. Yon, but it had come to the attention of this Board that he was not a responsible driver in that his schedule was irregular, either late or early, his bus poorly equipped, there being no glass windows or shutters in it, causing the children to get cold or possibly wet and at times their conduct was not such as it should have been—such as school children will indulge in, if not corrected. On account of the foregoing facts he was not awarded the contract.

"For the reasons above stated we did not award the contract to Mr. O. L. Hutto, the next lowest bidder, for Route D.

"The next lowest bidder was Mr. M. C. Laird at $85.00, who lives on Route D. From the facts before us we concluded he was a responsible driver, which is true, and awarded him the contract."

The State Board of Education without giving any reason for its action, made the following order, directing a reletting of the contracts:

"It is the finding of the State Board of Education that the County (Board) of Education of Lexington be directed to have a reletting on or before the 1st of January, 1932, to award contracts for driving buses in Pelion School District;

that in making the award the County Board of Education shall have in mind the following essential qualifications:

"1. Moral integrity.

"2. Ability properly and safely to drive a school bus, and to have a thoroughly equipped school bus.

"3. Essential power to control a group of children entrusted to the bus driver's care.

"4. A true conception of the obligations of punctuality and regularity in the operating of the school bus.

"5. That the law, relative to a trustee's becoming in any way a beneficiary of the provisions of the bus contract, be rigidly and fully met."

Thereupon, Hutto and Yon filed their petitions asking that writs of *certiorari* be issued, directed to the State Board of Education, commanding it to certify the records in both proceedings to this Court for review; and that the rulings and decisions of the board be reversed and the petitioners be adjudged entitled to an award of the contracts in accordance with their bids therefor. The writs were duly issued by Chief Justice Blease, and the State Board of Education, in response thereto, made return by filing with the Court all papers constituting the records of the two appeals. Hutto in his petition alleges that the State Board of Education committed error of law: (1) In not finding and holding that he was the lowest bidder and entitled to have the contract to transport the pupils on Route B awarded him at his bid therefor; (2) in not holding that the action of the County Board of Education in awarding the contract to Sharpe was in violation of law, for the reason that he was the highest bidder therefor; (3) in holding and directing the County Board of Education to relet the contract to transport pupils on Route B, as the record shows that the petitioner had complied in every respect with the bid requirements of the board; and (4) in failing to pass on the issues raised by the appeal. Yon in his petition imputes error to the State Board of Education in not awarding him the contract for transportation

of pupils on Route D and in awarding it to Laird, the highest bidder therefor; his other assignments of error being the same as those set out by the petitioner Hutto.

It will be noted that the Act provides that "all contracts for transportation shall be awarded to the lowest responsible bidder," and gives to the County Board of Education the right to "reject any and all bids, and to readvertise for new or additional bids." In thus vesting that board with so broad a discretion in the awarding of such contracts, it is evident that the Legislature had in mind the grave importance of properly protecting in every way the safety of pupils to be transported by buses to and from public schools, through the selection of persons who, in the good judgment of the board, will best perform the work in every way. The expression, "lowest responsible bidder," means more than the mere amount of the bid; it comprehends and refers to the fitness of the bidder in every respect—the sufficiency of his equipment, his morals, his skill and care as a driver, his faithfulness and regularity in the discharge of his duties, his ability to control a group of children and to properly protect them at all times, etc.

Counsel for the respondents, Sharpe and Laird, and for the two trustees, Schumpert and Hartley, make these pertinent observations: "The responsibilities and duties of a school bus driver transporting children to and from school are high and important, and the qualities to be considered in selecting such a driver are admirably covered in the decision of the State Board of Education, and the Act under which this law is administered required a 'responsible driver.' This wisely leaves the question of who shall be awarded the contract to the judgment and discretion of the County Board. They know the bidders, they know the character, the competency, the reliability, the fitness, the equipment of the parties. They must exercise supervision and care and judgment in letting such contracts."

While it is true, as we have stated, that the State Board of Education assigned no reason in its orders for its decision, we assume that it gave due consideration to all the grounds of appeal. We have made careful examination of the records, and conclude that the petitioners have no cause to complain. We think the State Board might properly have held that the county board, in awarding the contracts in question, did not abuse its discretion, and have affirmed its action—but the county board is not here complaining. As we have already pointed out, the county board is vested with a broad discretion in the matter, and the award of such contracts by it should not be disturbed, unless it is clearly shown that it abused its discretion, or that its action was the result of prejudice, caprice, or oppression.

Petitions dismissed.

MR. CHIEF JUSTICE BLEASE and MESSRS. JUSTICES CARTER and BONHAM and MR. ACTING ASSOCIATE JUSTICE S. W. G. SHIPP, Circuit Judge, concur.